All right, so we'll begin with Livermore v. Sandor. Good morning, Your Honors. My name is Karen Bucher. I represent Clint Livermore. And with the Court's permission, I'd like to preserve two minutes for rebuttal. This is the case where Mr. Livermore was convicted of murder because the jury believed he was playing blackout before the crash. A few weeks ago, this Court decided Lee v. Lambert. And in Lambert, the Court held that a credible claim of actual innocence constitutes an equitable exception to a deficit limitations period. And a couple of days ago, this Court issued an order to ask us to discuss the impact of that case and also the Suliotis case. And the impact is, if this Court does not find Mr. Livermore is entitled to equitable or statutory tolling, the case still can be remanded to the district court for determination on the merits, because Mr. Livermore has shown a credible showing of actual innocence. And what was that? What's his credible showing? The issue is, the defining issue in the case was whether or not he shut off the lights of his car because he was playing blackout, or did he shut off the lights because he was trying to warn the other driver there was something wrong with his brakes. The only evidence that the government had was a false statement by his wife who stated that he played blackout all the time, and she stated that because she was trying to get custody of her. Well, there was other evidence in the record that he admitted he had played blackout once before. Yes, Your Honor. Four years prior, that's correct. But he told the police officer he shut off the lights to warn the other driver. He also told his wife the same thing. I shut off my lights to warn the other driver. But when the wife was speaking to the police officer, the police officer said, well, I think he was playing blackout. And then a light bulb in her head goes off, and she says, yes, he plays that all the time. He plays blackout all the time. And she used that in hopes to get custody of her daughter. She had no idea that the manslaughter charges would be up to murder charges. And the jury didn't get to see her testify and let to know, this is what I did. I made a mistake. I lied to the police. I wanted to get custody of my daughter. I did it out of passion. Instead, the jury heard her preliminary hearing transcript where she did recount her story, but someone else read it into the record. They didn't get to see her explain the story. But the information was transmitted to the jury in any event. Correct, via a cold record. And the key point is, is that the prosecution used her absence to show that since she didn't show up, that she was probably lying on her preliminary hearing transcript and that she probably was truthful to the police officer. And they capitalized on that, because the jury is wondering, why isn't she here? We hear her actual voice on the tape. Mr. Livermore plays blackout. And then they hear the record, someone reading into the record, no, I made that up because I lied because I wanted custody of my daughter. And then the jury is wondering, well, where is she? How come she's not telling us? So that's the problem in this case. She wasn't present to tell the jury, this is what I did on behalf of my daughter. Okay. Your Honor, at the heart of this case is whether or not the 76 days was a reasonable delay in filing the petition in the California court of appeals. And when the California court of appeals issued its order, it didn't indicate whether or not that petition was timely. So in that event, the Supreme Court has instructed the circuit. Well, why don't you do that? There is case authority that you have to deal with. So how does Velazquez read on your case? The Supreme Court stated that the court looks at each case individually and look at the unique circumstances in each case. The Velazquez case we need to be mindful of, but the duty of the court in that case was to look at the facts in that particular case. In this court, the court is the focus of the unique circumstances in this case. And in this case, when the petition was filed on September 14th, the court already knew that the case was denied on June 29th because it's there in the petition. But even so, they asked the clerk to issue a letter to trial counsel, who was then a judge, now a judge, and to file a declaration explaining the allegations or answering the allegations in Mr. Livermore's IEC claim. And that takes a lot for someone new who's now a judge and have to explain what he did during trial, had to take the time to read the petition, had to prepare a declaration and file it. It was filed, and a few months later, the court of appeals issued a summary denial and said that the trial's motion is denied. And there's other things you can do. Kennedy, so how does that go to the delay? Where does that factor into the delay? I don't know. If the court of appeals actually thought it was untimely, they wouldn't have gone through that big process of sending out a letter to the trial counsel, asking them to read the petition, to respond to the petition by filing a declaration. They were actually seeking evidence, additional evidence, to consider whether or not Mr. Livermore had a claim, an effective sentence of counsel. There's no reason for them to do that if the court had already determined it was untimely. It makes no sense to that. Well, extraordinary circumstances are really required, aren't they? What are the extraordinary circumstances here? You mean as far as the delay? Uh-huh. Well, in California, you don't have to explain circumstances unless there is a substantial delay. There's a certain point where you don't have to explain. You just file your petition. But if you're waiting too long, like, for example, in the Clark case, the California case, he waited six, about six years before he filed his claim, and that was too long. But our case law says if we don't have a definitive inclination from the State court regarding timeliness, then we look at it to see whether or not it was filed within a reasonable time. Isn't that what we have to do? That's right. That's what the Supreme Court in Evans v. Chavez instructed the circuit to do, is to take a look at this case, not other cases, but this particular case and see, well, what did this – what did the California court of appeal think? What were they thinking? Was this timely or was it not timely? Well, but the presumption is if it's not within that 30- to 60-day span, it's unreasonable. And then we look to see whether or not there's an explanation as to why it exceeds that presumptively reasonable period. Your Honor, the way that I read Evans v. Chavez, the Court said it can't be substantially longer than the 30 or 60 days. There's going to be sort of a period. I mean, what is substantially longer? In this case, it was 16 days. It was like two weeks. We said 81 days is substantially longer, and that's not that much difference between 76 days and 81 days. No, but I – but in that case, the Court looked at the circumstances in that case. I don't think you can look at all these other cases. You have to be mindful of them, but say, well, because this Court said 81 days or 115 days, that that's sort of the catch-all or what we need to follow in this case. What we have to follow in this case is what did the California court of appeal – what did they – what would have they found? Did they find this case timely or not? And look at the facts in this case. They didn't find – they didn't make a – They didn't. The problem is they didn't make a determination of timeliness, so then we go to our case law as to how to determine whether or not it was reasonably fouled under the peculiar California structure. We make our best guess. Right. We're not trying to – we're trying to determine whether or not it was reasonable pursuant to how we define reasonableness when the California court has not made a determination of timeliness. But at the same time, you look at – but I'm trying to impart, at the same time, you look at the facts of the particular case. So you're saying because they asked for this additional information and that was evidence in their – of their action that indicated that they were not denied based on timeliness, but because they were concerned about the merits of the IAC claim. That's correct. And I don't think that they would have gone through that process if they believed it was untimely. And there's other factors to look at. For example, the Petitioner signed his petition on September 7th. You look at that. It took a week for the – for counsel to get the petition from the prison and file it. There's a – I think you just can look at the whole case in its entire picture. Okay. And then make a decision whether it was reasonable or not. All right. You can have the balance of time for rebuttal. Thank you, Your Honors. May it please the Court. My name is Katherine Chapman, and I'm here for the warden. I would like to say just a few words about the uncertified claim of actual innocence. First of all, because I would like to explain that we have never addressed this claim at all. It was not raised in the district court at all. It was raised for the first time as an uncertified issue in this Court. Well, you have the option of addressing it. You opted not to, so that was your choice. Correct. And this Court's rules permit us to do that, pending the – Do that with the understanding that you may not have the opportunity to brief it. My understanding is that we would normally have an order of the Court to brief it if the Court was going to consider it. Sometimes so, sometimes not. Okay. That being the case, I would first respectfully request the opportunity to do so if this Court is interested in entertaining the uncertified claim. But I can also, I think, within a few minutes, just on the record here, the declaration itself and the opinion of the Fifth District. Why don't you do that? I think we can quickly see. I'd use up the time. Okay. First of all, this evidence was presented at trial. Ms. Livermore testified at the preliminary hearing to the exact same effect that she states in this new declaration that was post-trial. She said, I lied, he didn't – I didn't see him play blackout all the time, I was in a custody battle, I was mad. Really, it was only one time. What's your response to opposing counsel's argument that the fact she wasn't there tempered the impact of her statement? I think that's highly speculative. The statement itself that she was countering was just a recording. So she wasn't there to give that statement either. And the other thing I would say, and I will turn here to the purpose of actual  The reason why she wasn't in trial to testify to this effect is because she deliberately absented herself from trial, as the court of appeal found in its opinion, which is in the record. The court of appeal found that Ms. Livermore intentionally frustrated the prosecution's efforts to call her as a witness in collaboration with members of Livermore's family and the defense team, that she was in fact available to him if he wanted to call her to testify. What was going on was the prosecution wanted to call her as a witness. They tried to find her without success for several weeks before trial. She led people to believe she had gone to Texas. She was in fact back together with Mr. Livermore and living with him at the time. So the absence of this evidence at trial is in no way a miscarriage of justice. It was a deliberate decision that was made by the defendant and this witness. What was the other evidence presented by the prosecution to support the idea that he was deliberately acting when he turned his lights off? There was a highway patrol accident investigation team that examined the car and found that the headlight switch. It was the type that pulls out and pushes back in, was in the off position after the accident. Mr. Livermore himself in his own testimony admitted that he had played this game of blackout before. The prosecution presented evidence, and this can be found in defense counsel's  presentation, he presented evidence from the attorneys and the family court proceedings that there was hostility between the parties during the divorce proceedings. I'm sorry, defense counsel presented that evidence. I may have misspoke. So so all that evidence was presented at trial. And so what we come down to is, was this strong evidence that destroys confidence in the verdict? No, not at all. I mean, because even if you even if the jury believed her preliminary hearing statement, which in all likelihood they did, it was given under oath and it was the last statement given. Still, you have the evidence, uncontroverted evidence before the jury that in fact, this man had done this before, confirmed by the physical evidence at the accident scene that the headlight switch was off. So this is not, this is not the type of evidence that undermines any confidence in the verdict at all. Can you address the question now on the statute of limitations issue as to counsel's argument about the actions of the court of appeal? Certainly. The fact that the court of appeal considered the merits of this claim and to some extent by seeking counsel's declaration does not in any way settle the question of timeliness. And this is, this is so because, well, first of all, if, if as in Saffold itself, an express decision on the merits can't settle this question of timeliness, then certainly an inference that the court was considering the merits at some point doesn't settle the question of timeliness. Similarly, a presumption of consideration on the merits doesn't settle the question of timeliness. And what, what the Supreme Court understood and explained in Saffold and again in Chavis is that a court will often go to the merits of a claim without regard to whether it was timely or not. If it's easier to do so, if, if for some reason they prefer to give a decision on the merits, and in, in California, when a court is considering a habeas petition, they're not required to issue a decision, a written decision. They're not required to address both prongs of their initial inquiry, which is does it present a prima facie case for relief? Is there a procedural bar apparent? They can issue a summary denial under California case law for one or the other reason. There's no requirement that they reach both issues. And in fact, when they're making this consideration this, which is a sort of an initial evaluation of the petition, they very often don't even have a response from the attorney general. So they haven't had briefing that points out to them, you know, that it fails on the basis of these reasons, it's procedurally barred for these reasons. So as this court said in Velazquez, the summary denial doesn't tell us what they did about timeliness. So, you know, the, any idea that consideration of the merits has a bearing on the question of timeliness is simply foreclosed from Saffold on, Saffold, Chavis, Velazquez. All of these cases make it perfectly clear that that doesn't indicate that the petition was bound timely. That being the case, we have here a 76 delay, which is beyond the benchmark of 30 to 60 days. The... Should we consider that under the equitable tolling, Prongman? Should we consider that the court solicited the declaration? Yes. I mean, does that go into a question? No, no, no, I don't think so. No, because equitable tolling has to be some external event that prevents the federal petition from being filed on time. And the fact that the court solicited a declaration, it in no way prevented... Well, first of all, that didn't happen until after the delay in this case, because the delay was, excuse me, I am wrong about that. The delay was between... Let me clarify that. Okay. The 76 days passed after the superior court denial and before the Fifth District Court of Appeal petition was filed. So the court's actions in soliciting the declaration happened after the delay. So in no way did it have anything to do with whether we should consider that time equitably tolled. If the Court has no further questions, I see my time is almost up. Thank you very much. Thank you. Your Honor, I just have a few comments. Mrs. Livermore wanted to testify. The reason why she wasn't in court, because defense counsel told her not to show up. She left at her direction. And that was the whole basis of the IAC claim. And also in Lee v. Lambert, the defendant doesn't have to prove innocence with absolute certainty. He has to just present evidence that undercuts the reliability of the proof of guilt. It doesn't rise to a miscarriage of justice. Okay. Thank you. Okay. Livermore is submitted and we thank counsel for their argument. Do we have counsel for Pena? Here. Thank you.
judges: Mills, Fisher, Rawlinson